Filed 5/20/24  In re I.P. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| In re I.P. et al., Persons Coming Under the Juvenile Court Law. | B331345 |
| _____ | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 19LJJP00900A-C |
| Plaintiff and Respondent, | |
| v. | |
| A.P., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Kristen Byrdsong, Commissioner.  Affirmed

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

———————————

A mother appeals the orders of the juvenile court that terminated her parental rights to her daughter I.P., son L.M., and daughter A.M., currently seven, five, and four years old, respectively.  The mother claims the court erred in finding the parental-benefit exception did not apply to her relationships with these three children.  (See *In re Caden C.* (2021) 11 Cal.5th 614, 631–632 (*Caden C.*).)

To prove this exception applies, the mother's burden was to establish all of the following:  (1) she visited her children regularly; (2) a substantial, positive, and emotional attachment exists between her and her children; and (3) terminating this attachment would be detrimental to the children.  (*Caden C., supra*, 11 Cal.5th at pp. 631, 636.)

We review resolution of the first two elements for substantial evidence.  We review the third element for abuse of discretion.  (*Caden C., supra*, 11 Cal.5th at pp. 639–640.)  By definition, substantial evidence review is deferential, as we must resolve all conflicts in the evidence in favor of the dependency court's ruling, must draw all reasonable inferences from that evidence in favor of the ruling, and may not reweigh the evidence or any credibility findings.  (*Estate of Berger* (2023) 91 Cal.App.5th 1293, 1307.)

We review the court's ruling, not its reasoning.  If the ruling was correct on any ground, we affirm.  (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875 ["The reviewing court may affirm a juvenile court judgment if the evidence supports the decision on any one of several grounds . . ."] .)

The juvenile court found a substantial, positive, and emotional attachment did *not* exist between the mother and her children.

Substantial evidence supports this factual finding, which is decisive of the mother's appeal.

We confine our factual recitation to matters relevant to the single issue on appeal.

I.P. was almost three years old, and L.M. about one and a half years old, when A.M. was born. The mother was living in the home of the children's maternal grandmother, along with a maternal uncle. About two months before the children were removed, I.P. and L.M. witnessed domestic violence between the mother and the uncle. All three children have multiple clinical signs of fetal alcohol syndrome. The social worker who removed the children from mother's care noted that they were dirty and smelled of urine. The mother was unable to attend to one child's potentially dangerous behavior while she was occupied with another child.

In December 2019, the dependency court ordered the children removed from the mother's care, with monitored visits three times per week for three hours at a time. The court placed I.P. and L.M. in a foster home together and A.M. with a maternal aunt. After a few weeks, the children were all placed together, and the court ordered that the mother's visits take place outside of the placement.

The court returned the three children to mother's care on June 16, 2021.

A week later, the mother brought A.M., then about one and a half years old, to the hospital. A.M. had second degree burns over 70 percent of her right hand and on part of her right thigh.

3

The mother told the hospital these injuries had occurred while she turned away from a bath for a few moments to grab a towel, and that she had brought A.M. to the hospital right away. The attending physician disbelieved mother's story because it did not credibly explain the medical situation: the burns would have taken longer than a few seconds to occur and must have been suffered at least two days before A.M.'s hospital visit. The doctor said the mother was irresponsible in delaying for days bringing A.M. for medical care. In truth, the burns had occurred four days earlier, the grandfather eventually confessed.

The court placed the children with their current caregivers. The elder two are together; the youngest is in a separate placement. These caregivers are also their intended adoptive parents.

Over time, the court reduced mother's visitation because it became convinced she could not handle all three children at once and had some difficulty managing the two older children without intervention by the visitation monitor.

By the time of the section 366.26 hearing in June 2023, mother was visiting with the children by virtual means only. Between the first and second days of the § 366.26 hearing, the mother was scheduled to have four virtual visits, two with the older children and two with the younger child. The visits with I.S. and L.M. went poorly. The mother failed to appear for the visits with A.M.

At the continued section 366.26 hearing on August 8, 2023, the court found that the beneficial parental relationship exception under section 366.26, subdivision (c)(1)(B)(i) did not apply, and no substantially positive emotional attachment of the

4

children with their parents outweighed the benefit of permanency.

Substantial evidence supported this finding.

On September 16, 2022, a social worker arrived to transport I.P. and L.M. to visit their mother. The children "screamed and cried that they didn't want to go on a visit." The social worker encouraged the children to attend the visit because they would have fun with the mother and A.M. The monitor reported the children were "all over the place" and required multiple timeouts. After the visit, I.P. and L.M. were aggressive and did not sleep through the night.

On September 23, 2022, an adult went to pick up the children from their visit with the mother. When the mother opened the front door, A.M. ran out of the home. The adult reported that, if she did not tell A.M. to stop running, the child would have likely run into the street. When the mother caught up to A.M., she appeared to be frustrated and lifted her hand as though to spank A.M. The monitor for the visit intervened, yelling for the mother and A.M. to return to the home.

The prospect of meeting with their mother distressed I.P. and L.M. before and after the visits. When it was time for a visit, the children screamed, "No, no visit. I don't want to go!" The children continued to scream as the social worker transported them to the visits. The monitor had to terminate one visit early "for safety." L.M soiled himself after every visit, and I.P. would wake up crying two or three times during the night after the visit The day after the visit, the children "were very dysregulated." Caregivers would have to spend all week stabilizing them until the next visit.

5

The children were nervous on their way to the visits, and they repeatedly soiled themselves in the car after the visits. Once the children returned home, their aggression would increase. L.M. would throw and break things, make holes in the walls, and wake up during the night after the visits. I.P. would scream, cry, kick L.M., spit at others, wake up during the night, and act aggressively with her classmates at school. The children's behaviors would continue for a week after the visits.

A.M. also reacted badly after her visits. At daycare, A.M. "destroyed" the room while she was supposed to take a nap. "She took out all the clothing, toys, pulled the windows, blinds[,] and more."

The social worker recommended the court terminate the mother's visits with the children.

The mother had virtual visits with I.P. and L.M. on two days in July 2023. When informed it was time for the first visit, both children screamed and refused to come to the computer. During the visit, "it was mostly [I.P.] screaming." L.M. said hello to the mother, but then asked for alone time.

On the second visit, L.M. said "I don't want a phone call!" He was crying and "throwing chairs." L.M. said hello to the mother, answered questions the caregiver asked him, and then told his mother he "didn't want to do a call" and "said bye and walked out of the room."

This evidence is substantial. The mother failed to prove a substantial, positive, and emotional attachment between her and her children.

## DISPOSITION

The orders are affirmed.

WILEY, J.

We concur:

STRATTON, P. J.

GRIMES, J.